UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALAN R. BEHRENS,

    Plaintiff,

vs.                                                 Case No. 8:14-cv-00083-T-27AEP

MANATEE COUNTY,

    Defendant.
_____/

## ORDER

**BEFORE THE COURT** is Manatee County's Dispositive Motion for Summary Judgment (Dkt. 20) and Plaintiff's opposition (Dkt. 36). Upon consideration, Defendant's motion for summary judgment is **GRANTED**. The undisputed material evidence demonstrates that Plaintiff was terminated for a legitimate, non-pretextual reason.

Behrens, who was born in 1957, was hired as a park ranger on a temporary basis by Manatee County in 2006. (Dkt. 1 ¶ 19; Dkt. 1-2; Dkt. 21 at 3, 6). Charlie Hunsicker, director of the Natural Resources Department, hired Behrens. (Dkt. 21 at 3-6). The temporary position was extended until July 2007, and Behrens was hired on a permanent basis in 2008. (*Id.* at 12-17). He applied for a promotion in 2009, but a younger, less-experienced employee was chosen. (Dkt. 1 ¶¶ 21-22). Soon after, he filed an internal complaint of age discrimination and was terminated. (*Id.* ¶¶ 23-24). He successfully appealed, and was reinstated in January 2010. (*Id.* ¶ 26).

Behrens contends the County repeatedly retaliated against him after he was reinstated. He relies on several discreet actions by the County: Four notices of policy violations were placed in his personnel file, based on alleged use of unprofessional language and insubordinate and threatening

1

conduct. (Dkt. 35-1 ¶¶ 11, 14-16). At the first department meeting after his reinstatement, Hunsicker introduced Behrens as a new employee, even though Behrens had worked in the same department until his termination four months previously. (*Id.* ¶¶ 17-18). And Behrens was reassigned to a location on the far side of the County from where he lived and had previously worked. He did not complain for fear of angering Hunsicker. (*Id.* ¶ 19). Marcus Campion, who worked in the same department as Behrens and was his supervisor, allegedly told Behrens that Hunsicker reassigned Behrens so that other employees could closely watch Behrens, with an eye to firing him. (*Id.* ¶ 20). In 2010, Behrens met with Human Resources Director Dale Garcia, telling Garcia he had been unduly penalized for the events leading to his termination in 2009. (*Id.* ¶ 21). At the same time, Behrens wrote to the EEOC that he was concerned about future retaliation. (*Id.*)

In July 2011 and again later that year, Behrens was passed over in favor of younger employees for a residential benefit program available to park rangers. (*Id.* ¶¶ 31-33, 35; Dkt. 1 ¶ 27). And in June 2012, Behrens was issued an "Employee Warning/Counseling Notice," allegedly for failing to report to his assigned post. (Dkt. 35-18). Behrens responded that he had not violated County procedures and that the department's scheduling was unduly complicated. (*Id.*) Behrens received an annual performance evaluation in October 2012, which referenced the scheduling problems. (Dkt. 35-20). The performance evaluation commended him for "improving your communication regarding your scheduling," but "caution[ed him] about an attitude" in improperly raising scheduling issues in front of his co-workers. (*Id.*) The performance evaluation also noted his "duty to maintain a positive attitude" and "to channel negative feedback appropriately to your supervisor or manager, and please, not to your co-workers." (*Id.*) He was rated: "meets expectations" in all respects. (*Id.*)

Management announced a pay raise for all County employees, the greater of 3% or $1200 per year, effective September 2012. (Dkt. 35-1 ¶ 22). However, Behrens was denied the raise because

he had not completed certain training he would have completed had he not been terminated in 2009. (*Id.* ¶ 23-24). Behrens complained within his department, but did not receive a satisfactory response, and eventually had to complain to human resources. (*Id.*) Finally, Hunsicker approved the raise, but wrote that he had "initially contemplated disciplining [Behrens] for this unprofessional conduct" [of threatening a legal challenge if he did not receive the raise]. (Dkt. 35-21; *see* Dkt. 35-1 ¶¶ 22-28).

On April 16, 2013, Behrens was a passenger in a County truck driven by Campion. (Dkt. 35-1 ¶ 46). The truck was involved in a minor accident. (*Id.*) County policy requires accidents to be promptly reported and that post-accident drug and alcohol testing be completed within 32 hours of the accident. (*See* Dkt. 24 at Ex. 29). Behrens called in sick on April 22, the next day he was scheduled to work after the accident. (Dkt. 27 at 23-24). The parties dispute whether he linked his absence to the accident, but Campion believed that he had. (*Id.* at 27-29). That day, Campion submitted, for the first time, a drug test referral form for Behrens based on a request for workers' compensation. (Dkt. 24 at Ex. 33). Behrens denies he sought workers' compensation. (Dkt. 35-1 ¶¶ 48, 53).

Regardless, Behrens reported to a medical facility approved by the County for workers' compensation claims, as "ordered" by Campion. (*Id.* ¶ 51). After waiting for some time, Behrens began to experience low blood sugar symptoms. (*Id.* ¶¶ 51-52, 56-57). When a nurse called him back to begin examining him, Behrens said he needed to eat and left to find food. (*Id.* ¶¶ 57-58). Behrens did not realize he would be accused of refusing a drug test. (*Id.* ¶ 59). The nurse from the medical facility wrote the County, stating she had begun to lead Behrens to a room for drug and alcohol screening, when he left, reportedly saying, "I am feeling a little hungry and have a half of a sandwich out in the truck; I'm going to go eat that and come back in." (Dkt. 35-30). The medical facility advised the County that Behrens did not return, and called the next day to close the workers'

compensation claim. (*Id.*) The County interpreted this as a refusal to submit to drug testing, in violation of its Drug Free Workplace Policy. (Dkt. 24 at 12; *id.* at Ex. 29). The policy states, "Any on-the-job injury, for which an employee requests or is required to seek Workers' Compensation medical treatment, amounts to sufficient reasonable suspicion to require drug testing. All employees reporting for such medical treatment will submit to a drug/alcohol test as part of the evaluation." (Dkt. 24 Ex. 29 at XX-B(1)(c)(4)).

When Behrens reported to work on April 26, he received a letter from Hunsicker terminating his employment for failure to comply with the drug policy. (Dkt. 20-1 at Ex. 37). He internally appealed his termination to Garcia, but Garcia refused to overturn it. (Dkts. 35-29, 35-30). Behrens then filed a charge of discrimination with the EEOC and brought this lawsuit, contending age discrimination and retaliation in violation of the Age Discrimination in Employment Act and the Florida Civil Rights Act. (Dkt. 1).

## II. STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is material if it may affect the outcome of the suit under the governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Plaintiff's evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 249.

The Court will not weigh the evidence or make findings of fact. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Id.*

## III. DISCUSSION

Behrens brings a claim of retaliation under the Age Discrimination in Employment Act and the Florida Civil Rights Act.[1] ADEA and FCRA claims are analyzed under the same standards. *See Drago v. Jenne*, 453 F.3d 1301, 1307 (11th Cir. 2006). Courts use the framework developed in Title VII claims to analyze ADEA claims of retaliation. *See id.*; *Chapman v. AI Transportation*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc).

To establish a prima facie case of retaliation, a plaintiff must show (1) he engaged in statutorily protected activity, (2) suffered a materially adverse employment action, and (3) there was a causal relationship between the two events. *See Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1211 (11th Cir. 2013); *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008). If Behrens can establish a prima facie case of retaliation, the County then bears the burden to establish a legitimate, non-retaliatory reason for the adverse action. *Coutu v. Martin County Bd. of County*

---

[1] Originally, Behrens also brought a claim for discrimination (Dkt. 1 ¶¶ 31-38), but has abandoned this claim and is now proceeding solely on his retaliation claim. (*See* Dkt. 36 p. 13 n. 1). Summary judgment in favor of Defendant is therefore due to be granted on Count One.

*Com'rs*, 47 F.3d 1068, 1075 n. 54 (11th Cir. 1995). And if the County is able to do so, Behrens then must establish the reasons given by the County were a pretext for retaliation. *Chapman*, 229 F.3d at 1024. As explained below, summary judgment is due to be granted to the County, because even though Behrens is able to demonstrate a prima facie case of retaliation, the County established a legitimate, non-retaliatory reason to terminate him, and Behrens cannot establish the County's reasons were actually pretextual.

### A. Behrens Can Make a Prima Facie Case of Retaliation

There is no dispute that Behrens engaged in statutorily protected activity and suffered a materially adverse employment action. The parties agree that the 2009 internal complaint made by Behrens was protected conduct and his 2013 termination was an adverse decision. Behrens contends he engaged in protected conduct again in "early 2010" when he met with Garcia after his reinstatement and provided Garcia with a copy of a letter he had sent to the EEOC regarding his claim of age discrimination. (Dkt. 35-1 ¶ 21). Viewing the facts in the light most favorable to Behrens, his meeting with Garcia and the letter to the EEOC constituted statutorily protected activity. Therefore, Behrens must demonstrate a causal relationship between the protected activity in 2009 or early 2010 and his termination in 2013.

The requirement of a causal link is "broadly" construed. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). Indeed, a plaintiff need only show that the protected conduct and adverse employment action "are not completely unrelated." *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998) (quoting *E.E.O.C. v. Reichhold Chem., Inc.*, 988 F.2d 1564, 1571–72 (11th Cir. 1993)). To demonstrate a causal relationship, a plaintiff must demonstrate the adverse decision was made by a person with knowledge of the protected expression, and that there is evidence tending to show causation or a close temporal proximity between the protected express and the adverse action.

*Higdon*, 393 F.3d at 1220. A close temporal proximity has been interpreted to include as long as one month, but periods of three or four months have been deemed too protracted. *Brown v. Alabama Dep't of Transportation*, 597 F.3d 1160, 1182 (11th Cir. 2010). An ultimate adverse action can be linked to temporally distant protected expression if there is a chain of intervening retaliatory acts between the two. *See Bass v. Bd. of Cnty. Comm'rs, Orange Cnty., Fla.*, 256 F.3d 1095, 1117-19 (11th Cir. 2001) (overruled on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).

Behrens has not demonstrated through direct evidence a causal link between the protected conduct in 2009 and 2010 and his 2013 termination. The hearsay statement allegedly made by Campion to Behrens about Hunsicker's intentions from early 2010 is insufficient to demonstrate such a link. (*See* Dkt. 35-1 ¶ 20). Therefore, he must satisfy the causation requirement with temporal proximity. He attempts to temporally link his protected conduct in 2010 to his termination in April 2013 through a chain of allegedly retaliatory actions.[2]

First, Behrens contends his denial of a promotion and subsequent termination in 2009 were adverse actions. (*Id.* ¶ 2). Second, Behrens received a notice of disciplinary action in March 2010, related to his alleged use of unprofessional language and insubordination. (*Id.* ¶ 11, 13-15). Near the same time, Behrens learned his official date of hire had been changed from October 2008 to September 2009, which he feared could affect his retirement plan and career advancement. (*Id.* ¶ 16). After Behrens was reinstated in 2010, Hunsicker introduced him as a new employee at a department meeting, which Behrens says "humiliated" him in front of his coworkers. (*Id.* ¶ 17). Behrens was

---

[2] The County contends Behrens did not exhaust his administrative remedies for the allegedly adverse actions he relies on except for his 2013 termination. However, these actions may be considered not as discrete actions that may independently subject the County to liability for retaliation, but as "background evidence in support of [the] timely claim" based on his ultimate termination, and they will be so considered. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

also assigned to a distant area of the County after reinstatement, which was inconvenient for him, but he did not complain. (*Id.* ¶ 19).

Next, Behrens contends he was passed over for a residential benefit, which included rent-free accommodation and a special vehicle, in favor of younger employees in July 2011 and again at the end of 2011. (*Id.* ¶¶ 31-33, 35). The following year, Behrens received an "Employee Warning/Counseling Notice" for allegedly failing to report to his assigned post in June 2012. (Dkt. 35-18). And he relies on his 2012 performance evaluation, issued in October 2012, which referenced the previous staffing problems. (*See* Dkt. 35-20). Finally, Behrens was denied a raise given to all county employees in September 2012. He had to receive special approval for the raise, which did not come until November 2012, and was authorized in Hunsicker's memorandum that stated that Hunsicker had "initially contemplated disciplining [Behrens] for this unprofessional conduct." (Dkt. 35-21; *see* Dkt. 35-1 ¶¶ 22-28).

However, not all of these occurrences rise to the level of adverse employment actions. It is the plaintiff's burden to show that a reasonable employee would have found the employment action to be "materially adverse," because "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 68. Among the acts that have been found to be materially adverse include a 37-day suspension without pay, reassignment of a worker to a new position with less prestige and responsibility, and negative performance reviews linked to a denial of a merit pay increase. *Id.* at 70, 72; *Holland v. Gee*, 677 F.3d 1047, 1058 (11th Cir. 2012); *Crawford v. Carroll*, 529 F.3d 961, 973-74 (11th Cir. 2008). However, "trivial harms" and "petty slights" are not adverse employment actions. *Burlington Northern*, 548 U.S. at 68.

The denial of a promotion in 2009 and subsequent termination constitute adverse employment actions. *See id.* Viewing the evidence in the light most favorable to Behrens, the notice

of discipline and change in his hire date are also adverse actions, as they are actions that could dissuade a reasonable worker from protected activity. *Thompson v. North American Stainless, LP*, 562 U.S. 170, 174 (2011). After his reinstatement, the transfer to a distant location could be seen a retaliatory work assignment, a "classic" and "widely recognized" example of an adverse action. *Burlington Northern*, 548 U.S. at 71 (quotation and citation omitted); *Holland*, 677 F.3d at 1057. There are factual disputes about the alleged denial of the residential benefit, and viewing it in the "totality of the alleged reprisals," they could be adverse employment actions. *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1245 (11th Cir. 2001) (quoting *Wideman v. Wal-Mart Stores Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998)).

However, at least two of the acts Behrens contends were retaliatory do not reach the level of severity required by the objective standard established in *Burlington Northern*. First, the warning/counseling notice he received in June 2012 for not reporting to his shift on time is not materially adverse. That warning notice specifically states it is "[n]ot to be used for discipline," unlike the notice of discipline Behrens received in 2010. (Dkt. 35-18). Behrens is unable to show that it led to "any tangible form of adverse action such as loss in benefits, ineligibility for promotional opportunities, or more formal discipline." *Austin v. City of Montgomery*, 196 Fed. App'x 747, 753 (11th Cir. 2006). All that the warning notice stated was that "future instances of failure . . . to report to work as assigned" would be punished. (Dkt. 35-18). Although in acknowledging receipt of the warning, Behrens wrote that this was "one more example of retaliatory measures taken against me because of my previous successful discrimination complaint," he has not demonstrated a tangible loss from the warning notice. (*Id.*) *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001) ("Negative performance evaluations, standing alone, do not constitute adverse employment action sufficient to satisfy the second element of a prima facie case

of retaliation. . . .")

Likewise, he has not demonstrated a tangible loss arising from his 2012 performance evaluation, which was issued in October 2012. The evaluation includes a section on "Dependability/Reliability," which states "I have to caution you about an attitude I have seen in you . . . which reflects poorly on your dependability, your willingness to work and how well a team-player you are . . . . I strongly urge you to reconsider how you comment about scheduling around everybody. In the next year, I expect you to turn this attitude around." (Dkt. 35-20). Notwithstanding this comment, Behrens was graded as "Meets Expectations" in the area and indeed for all categories. (*Id.*) As Behrens cannot tie the performance review to any tangible action, the 2012 performance evaluation does not constitute a "materially adverse" action. *Cf. Crawford*, 529 F.3d at 973-74 (negative performance evaluation leads to employee's inability for merit pay increase).

Finally, the initial denial of the raise in September 2012, reversed in November 2012, poses a close question. He contested the denial and was eventually given the raise, retroactive to the date he would have been eligible for the raise if he had not been removed from his job in 2009. (Dkt. 35-21). While it is undisputed that Behrens' eligibility for the raise was not related to the 2012 performance review, there is evidence that he did not initially receive the raise because he had not completed training he would have completed if he had not been terminated in 2009. (*See* Dkt. 1-2 at 5). Normally, rescinded action is not an adverse employment action. *See Davis*, 245 F.3d at 1244; *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001) ("the decision to reprimand or transfer an employee, if rescinded before the employee suffers a tangible harm, is not an adverse employment action"); *McDonald v. ST Aerospace Mobile, Inc.*, No. CIV.A. 12-0313-CG-C, 2013 WL 1007712, at *5 (S.D. Ala. Mar. 12, 2013) ("a rescinded suspension cannot qualify as an adverse employment action for purposes of a Title VII analysis."). However, in *Crawford*, the Eleventh

Circuit explained that a retroactive pay raise did not "erase all injury associated with it." 529 F.3d at 971. *Accord Burlington Northern*, 548 U.S. at 72-73. Accordingly, a jury could find that the rescinded denial of the pay raise in November 2012 constituted an adverse employment action.

To summarize, a jury could find that Behrens engaged in protected activity in 2009 and 2010, and thereafter suffered a series of adverse actions, including the receipt of a formal disciplinary notice, a change in his official hire date, reassignment of his work location after reinstatement in 2010, denial of the residential benefit on two occasions in 2011, and the initial denial of the countywide raise in November 2012, culminating in his termination in April 2013.[3] As noted, the Eleventh Circuit has held that a gap of three months between protected activity and adverse actions is insufficient as a matter of law to show causation. *Thomas v. Cooper Lighting, Inc.*, 503 F.3d 1361, 1364 (11th Cir. 2007). However, in cases where the plaintiff can demonstrate a chain of adverse actions, causation has been found to exist, notwithstanding a temporal gap longer than three months. *See Gupta v. Florida Board of Regents*, 212 F.3d 571, 590 (11th Cir. 2000) (overruled on other grounds by *Burlington Northern*, 548 U.S. 53) (when university denies assistant professor extension of tenure clock one year after professor filed discrimination lawsuit, the denial of the extension is causally related to the filing of the lawsuit); *Bass*, 256 F.3d at 1101, 1119. Therefore, viewing the facts in the light most favorable to Behrens, the jury could determine that Behrens makes a prima facie case of retaliation.

### B. Behrens' Termination Was Legitimate and Not Pretextual

Even if Behrens can demonstrate a prima facie case of retaliation, he fails to overcome the County's legitimate, non-discriminatory justification for his termination. The County bears the burden of establishing that Behrens was terminated for legitimate reasons, and if it does so, the

---

[3] As noted, Behrens uses the actions before termination to satisfy the causation requirement, but not as independent actions giving rise to separate liability. (*See* Dkt. 1 ¶ 42; Dkt. 1-2).

11

burden shifts to Behrens to show that the County's reasons were pretextual. *See Chapman*, 229 F.3d at 1024; *Damon v. Fleming Supermarkets Of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) ("We have repeatedly and emphatically held that a defendant may terminate an employee for a good or bad reason without violating federal law. . . . We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful [retaliation] motivates a challenged employment decision.")

The County contends Behrens was terminated for violating its zero-tolerance Drug Free Workplace Policy. (Dkt. 24 at 14-32). As noted, that policy states that "[a]ny on-the-job injury, for which an employee requests or *is required to seek* Workers' Compensation medical treatment, amounts to sufficient reasonable suspicion to require drug testing. All employees reporting for such medical treatment will submit to a drug/alcohol test as part of the evaluation." (*Id.* at XX-B(1)(c)(4)) (emphasis added). Violations of the policy result in automatic termination. (Dkt. 29 at 54-56).

There is no dispute that Behrens was required by the County to seek medical treatment related to the April 16, 2013 accident. (*See* Dkt. 35-1 ¶ 50). While Behrens claims he did not request or need medical treatment, the policy allows the County to require employees to seek medical treatment, and that in turn provides for reasonable suspicion to require a drug test. It is undisputed that Behrens did not submit to the drug test. Therefore, the County has carried its burden of establishing that Behrens was terminated for a legitimate, non-discriminatory reason. *See Bailey v. City of Daytona Beach Shores*, 560 Fed. App'x 867, 871 (11th Cir. 2014) (enforcement of drug-free policy is legitimate, non-discriminatory reason for termination).

Behrens has not carried his burden of establishing that the County's stated reason for termination was pretextual. He is required to "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for

its action that a reasonable factfinder could find them unworthy of credence." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1275 (11th Cir. 2008) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)). He must do so in the "form of specific facts" that show the employer's reasons were pretextual. *Wilcox v. Corr. Corp. of Am.*, 2015 U.S. App. LEXIS 3768, at * 11 (11th Cir. Mar. 11, 2015) (quoting *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009)). Rather than simply showing that the County's policy was unfair or mistaken, Behrens must show that it did not truly rely on the proffered reasons. *See Damon*, 196 F.3d at 1363 n.3 (11th Cir. 1999) ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct.") Therefore, the inquiry on pretext centers on the employer's "good faith belief," not the employee's interpretation of the events. *E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000).

Applying this standard, Behrens is unable to demonstrate that the County did not honestly believe he had violated its drug-free policy. Behrens' contentions about *his* beliefs–disclaiming workers' compensation, not realizing he was refusing a drug test, lack of notification that the test was mandatory–cast no doubt on the *County's* motivations. (*See generally* Dkt. 35-1 ¶¶ 42-59). And Behrens' argument that the drug test was improper because it was not administered within 32 hours of the incident, as required by Section XX-B(1)(c)(5) of the policy in the case of "post-accident testing," is of no moment. (*See* Dkt. 24 at 19-20). The County reasonably interprets its policy as requiring a drug test in the course of seeking workers' compensation, independent of the requirement for testing after accidents. (*Id.*; *see* Dkt. 35-30). This interpretation is supported by the fact that Behrens was referred for the drug test based on the claim that he "Requested Workers' Compensation medical treatment for an on-the-job injury (**Not related to a vehicle accident**)." (Dkt. 35-25) (emphasis original). Finally, Behrens argues that none of the other fourteen terminations the

County made for failure to comply with its drug policy from 2011 to 2013 were based on refusals to take a drug test. (*See* Dkt. 24 at 3-5). While this appears to be true, it does nothing to undermine the County's assertion that the termination of an employee for refusal to submit to a drug test was automatic and nondiscretionary. (*Id.* ¶¶ 6-7, 9-10). Accordingly, Behrens has failed to carry his burden of demonstrating that the County's reasons for his termination were pretextual.

### IV.   MOTIONS TO STRIKE

Behrens moves to strike the affidavits of JoAnn Gallo and Kay Rogers and attached documents. (Dkt. 37). Those affidavits and documents have not been considered and accordingly, the motion to strike is denied as moot. The County moves to strike portions of Behrens' affidavit. (Dkt. 39). The admissibility of this evidence does not affect the outcome of the summary judgment motion, and accordingly, the motion to strike is denied as moot.

Accordingly, Defendant's Motion for Summary Judgment (Dkt. 20) is **GRANTED**. Plaintiff's Motion to Strike and Defendant's Motion to Strike (Dkts. 37, 39) are **DENIED** *as moot*. The Clerk is directed to enter judgment in Defendant's favor and **CLOSE** this case.

**DONE AND ORDERED** this 31st day of March, 2015.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record